**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 07-21489-CIV-UNGARO

GREAT AMERICAN INSURANCE COMPANY,
a foreign corporation,

       Plaintiff,

v.

GENERAL CONTRACTORS & CONSTRUCTION
MANAGEMENT, INC., a Florida corporation, AKRAM
NIROOMAND-RAD and KAMRAN GHOVANLOO,

       Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on Plaintiff's Motion for Final Summary Judgment and

Supporting Memorandum of Law, filed on April 11, 2008 (D.E. 101).  Defendant Akram

Niroomand-Rad filed her Response in Opposition on April 25, 2008 (D.E. 123).  Plaintiff filed a

Reply in further support of its Motion on April 30, 2008 (D.E. 127).  Defendant Kamran

Ghovanloo's Response was originally due on April 28, 2008.  As a result of the Court's decision

to allow his counsel to withdraw (*see* D.E. 134), the Court allowed Defendant Ghovanloo until

May 19, 2008 to file his Response.  Though Defendant Ghovanloo has failed to file a Response

to the Motion, the Court has exhaustively reviewed Plaintiff's Motion and is satisfied that the

requested relief is warranted against Defendant Ghovanloo for the reasons elucidated in the

below Order.  The Court previously entered a Final Default Judgment against Defendant General

Contractors & Construction Management, Inc. ("GCCM"), on April 22, 2008 (D.E. 116).

However, the Court has exhaustively reviewed Plaintiff's Motion and is satisfied that the

requested relief is warranted against Defendant GCCM for the reasons elucidated in the below

Order.  As such, the Motion is now ripe for adjudication.

THE COURT has considered the Motion and the pertinent portions of the record and is

otherwise fully advised in the premises.

## BACKGROUND[1]

On April 24, 2001, Defendants executed an Agreement of Indemnity (the "Indemnity

Agreement") in favor of Plaintiff as a condition precedent to Plaintiff's issuance of surety bonds

on behalf of GCCM.  (Plaintiff's Statement of Undisputed Material Facts ("PSUMF") ¶ 1;

DSMF ¶ 1.)  Pursuant to the Second Article of the Indemnity Agreement, Defendants

Niroomand-Rad and Ghovanloo (the "Indemnitors") and Defendant GCCM (the "Contractor")

jointly and severally pledged to indemnify and/or exonerate Plaintiff (the "Surety") from and

against any losses and/or expenses incurred in connection with the issuance of any of the surety

bonds and to make such payment as soon as liability exists or is asserted against the Surety.[2]

---

[1] Plaintiff and Defendant Niroomand-Rad have submitted statements of material facts in support of and in opposition to the instant Motion.  To the extent that Defendant (the non-movant) controverts the facts alleged by Plaintiff, the Court will adopt the facts set forth within Defendant's statement.  *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).  To the extent that Defendant does not controvert the facts alleged by Plaintiff and those facts are supported by the record, the Court adopts the facts contained within Plaintiff's statement.  *See* S.D. Fla. L.R. 7.5.D ("All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement . . . ").  Having reviewed Defendant's statement of material facts, the Court finds that in such statement, apart from bringing to light several additional facts related to Defendant's involvement with GCCM during the periods in question, Defendant appears not to dispute the factual allegations set forth by Plaintiff, instead reiterating many of Plaintiff's allegations.  (*See, e.g.,* Defendant's Statement of Material Facts ("DSMF") ¶ 8 ("E.V. Construction filed suit against GCCM and [Plaintiff] in 2006.").)  As such, the Court will deem as admitted the majority of Plaintiff's factual allegations to the extent that they are supported by record evidence and do not conflict with the scant facts alleged by Defendant Niroomand-Rad.

[2] The Second Article reads, in pertinent part:

2

(*See* Compl., Ex. C.)  Additionally, under the Indemnity Agreement, the Indemnitors specifically granted to Plaintiff the right to settle or compromise any claim related to any of the Surety bonds.[3]  Pursuant to the Indemnity Agreement, Plaintiff issued two bonds on behalf of GCCM, one in the amount of $4,580,000 for the Royal Palm Elementary School Project (the "Royal Palm Project") and one in the amount of $3,469,865 for the William H. Turner Technical Arts Senior High School Project (the "Turner Project").  (PSUMF ¶ 6; DSMF ¶ 6.)

On or about November 17, 2006, the Miami-Dade County School Board ("MDCSB") declared GCCM to be in default of its obligations under the contract for the Turner Project, and in January 2007, terminated GCCM's rights under the contract for default.  (PSUMF ¶ 7.) Pursuant to the Turner Project Performance Bond, MDCSB demanded that Plaintiff complete the

---

> The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.  Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.

(Compl., Ex. C.)

[3] The Thirteenth Article reads, in pertinent part:

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

(Compl., Ex. C.)

work remaining under GCCM's contract.  (PSUMF ¶ 7.)  Plaintiff also received claims from

unpaid subcontractors and suppliers under the Turner Project Payment Bond.  (PSUMF ¶ 8.)

One such claimant, E.V. Construction, Inc., filed suit against Plaintiff and GCCM in state court.

(DSMF ¶ 8.)  On March 6, 2007, Plaintiff made a demand that (1) GCCM exonerate, reimburse,

and indemnify Plaintiff in connection with the Turner Project, as well as for all related counsel

fees, consulting fees, costs, and expenses and (2) GCCM post collateral security with Plaintiff in

the amount of $1,000,000 for completion of the Turner Project and $75,000 for the E.V.

Construction payment bond claim.  (PSUMF ¶ 9; DSMF ¶ 9.)  In accordance with its obligations

under the Turner Project Performance Bond, Plaintiff conducted an investigation into the claim

and thereafter arranged for the completion of the Turner Project, having spent $2,689,687.35 to

date on such project.  (PSUMF ¶ 10.)  Despite Plaintiff's demands, the Indemnitors and the

Contractor failed to (1) provide the demanded collateral security deposit or (2) reimburse,

exonerate, and/or indemnify Plaintiff; however, no demand was made upon Defendant

Niroomand-Rad personally to provide the collateral security deposit or to reimburse,  exonerate,

and/or indemnify Plaintiff with regard to the Turner Project.  (PSUMF ¶ 11; DSMF ¶ 11.)

Plaintiff also received claims under the Royal Palm Payment Bond, including a state court

suit by Klean Power Electric, Inc., seeking damages in excess of $136,000.  (PSUMF ¶ 12;

DSMF ¶ 12.)  On March 6, 2007, Plaintiff demanded that the Indemnitors and the Contractor

provide collateral with respect to the potential exposure created by the Klean Power claim;

however, no demand was made upon Defendant Niroomand-Rad personally to provide the

collateral security deposit or to reimburse, exonerate, and/or indemnify Plaintiff with regard to

the Royal Palm Project.  (PSUMF ¶ 13; DSMF ¶ 13.)  Neither the Indemnitors nor the Contractor

provided collateral to Plaintiff with regard to the Klean Power claim.  (PSUMF ¶ 13.)  In March 2008, Plaintiff settled the Klean Power claim for $68,000 and obtained a release of that claim in favor of GCCM and Plaintiff.  (PSUMF ¶ 14.)  Plaintiff incurred fees and expenses for attorneys and consultants in the amount of $59,752.32 as a result of issuing the bonds for the Royal Palm Project.  (PSUMF ¶ 14.)  Although it has not yet received a claim from the Broward County School Board ("BCSB") under the Royal Palm Project Performance Bond, Plaintiff anticipates receiving such a claim from BCSB because BCSB has repeatedly complained about GCCM's performance on the Royal Palm Project and has demanded that Plaintiff "intervene" in the performance of the bonded contract.  (PSUMF ¶ 15; DSMF ¶ 15.)  Additionally, on May 20, 2008, BCSB notified GCCM of its non-performance under the Bond and warned GCCM that if it does not cure such issues within seven days, BCSB will terminate GCCM.  (*See* D.E. 135.)

On June 8, 2007, Plaintiff filed the Complaint herein, demanding, among other things, exoneration and the posting of collateral security by Defendants.  (*See generally* Compl.)  Plaintiff filed its Motion for Summary Judgment on April 11, 2008 (D.E. 101).  In the instant Motion, Plaintiff moves for judgment as a matter of law that it is entitled to (1) a monetary judgment in the amount of $2,930,899.97 against all Defendants, jointly and severally, and (2) a final decree requiring Defendants, jointly and severally, to provide Plaintiff with cash collateral in the amount of $75,000.  (Pl.'s Mot. 2.)

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

5

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56.  The

Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), that when

assessing whether the movant has met this burden, the court should view the evidence and all

factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of

the pleadings; after the moving party has met its burden of coming forward with proof of the

absence of any genuine issue of material fact, the non-moving party must make a sufficient

showing to establish the existence of an essential element to that party's case, and on which that

party will bear the burden of proof at trial.  *Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Poole*

*v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883

F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the court must not decide them; it must deny the

motion and proceed to trial.  *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.

1981).[4]  Summary judgment may be inappropriate even where the parties agree on the basic facts,

but disagree about the inferences that should be drawn from these facts.  *Lighting Fixture &*

*Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).  If reasonable

minds might differ on the inferences arising from undisputed facts then the court should deny

summary judgment.  *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems,*

*Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[4]Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

6

248 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## ANALYSIS

Plaintiff first argues that it is entitled to indemnification by Defendants for the losses and expenses it incurred as a result of issuing performance and payment bonds for the Turner Project and the Royal Palm Project. (Pl.'s Mot. 2.) According to the Indemnity Agreement, Defendants are required to indemnify Plaintiff from and against losses and/or expenses incurred in connection with the issuance of surety bonds. Defendant Niroomand-Rad contends that Plaintiff has no present right to indemnification because no declaration of default has ever been made on the Royal Palm Project. (Def.'s Resp. 2.) As an initial matter, the Court notes that Defendant's argument does not apply to Plaintiff's claims for indemnification under the Turner Project, because GCCM has already been declared to be in default under such project. However, Defendant Niroomand-Rad's argument still fails with respect to the Royal Palm Project, because the Indemnity Agreement does not require that a declaration of default be made by on a bonded

7

contract before Plaintiff is entitled to be indemnified by Defendants.  Defendants must indemnify Plaintiff as soon as liability exists or is asserted against Plaintiff.  (*See* Compl., Ex. C ("Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors *as soon as liability exists or is asserted against the Surety*, whether or not the Surety shall have made any payment therefor.") (emphasis added).)  In this case, both MDCSB and E.V. Construction, Inc., have asserted claims against Plaintiff regarding the work on the Turner Project and Klean Power Electric, Inc., has asserted a claim against Plaintiff for its work on the Royal Palm Project.  Accordingly, Plaintiff is entitled to indemnification from Defendants with respect to the claims.

With respect to defenses, it is well settled that the only defense to indemnity is bad faith on the part of the surety.  *Liberty Mut. Ins. Co. v. Aventura Engineering & Const. Corp*., 534 F.Supp. 2d 1290, 1319-20 (S.D. Fla. 2008); *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F.Supp. 1100, 1103 (S.D. Fla. 1990).   Courts have consistently upheld a surety's contractual rights so long as the surety acted in a good faith belief that it was required to act or pay, regardless of whether any liability existed.  *Liberty Mut. Ins. Co.*, 534 F.Supp. 2d at 1316.  To establish bad faith, an indemnitor must demonstrate that the surety acted with "deliberate malfeasance" which means "'an intentional wrongful act which the actor has no legal right to do, or any wrongful conduct which affects, interrupts, or interferes with the performance of official legal duty.'"  *Id.* (citing *Employers Ins. of Wausau*, 749 F.Supp. at 1103).  A "lack of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith."  *Employers Ins. of Wausau*, 749 F.Supp. at 1103.

Defendant Niroomand-Rad argues that Plaintiff bears the burden of proving that its payments were made in good faith and that the lack of discovery on this issue precludes the entry of summary judgment.  (Def.'s Resp. 4-5.)  While it is true the burden is on Plaintiff to establish that it was not deliberately malfeasant in making payments, *see Employers Ins. of Wausau*, 749 F.Supp. at 1103, Plaintiff has made a *prima facie* case that it made the payments in good faith. The Indemnity Agreement states in the Second Article that when the Surety makes payments thereunder, the "evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety."  (Compl., Ex. C.)  Here, it is undisputed that Plaintiff has made payments totaling $2,930,899.97 pursuant to the Indemnity Agreement, which amounts to a *prima facie* showing that the payments were made in good faith.  Defendant Niroomand-Rad has provided not a shred of evidence that would contravene Plaintiff's *prima facie* showing of good faith, let alone show anything approaching deliberate malfeasance on the part of Plaintiff.  Thus, the Court finds that Plaintiff is entitled to summary judgment on the issue of indemnification.

Plaintiff next argues that it is entitled to a final decree of specific performance to compel Defendants to post collateral against the potential liability it faces under the E.V. Construction claim.  (Pl.'s Mot. 10-14.)  Although Plaintiff claims that the Indemnity Agreement entitles it to require Defendants to post collateral security (*see* Pl.'s Mot. 10; PSUMF ¶ 3), the Court finds no such language in the Indemnity Agreement.  Unlike the indemnity agreement in *Liberty Mut. Ins. Co.*, which specifically provides that the surety can require the indemnitors to post collateral

security,[5] the Indemnity Agreement does not even mention "collateral security," let alone give

Plaintiff any rights to have it posted by the Indemnitors.[6]   Thus, the Court finds that Plaintiff does

not have a contractual right to require Plaintiff to post collateral security.   As a result, Plaintiff is

not entitled to a decree of specific performance to enforce such non-existent collateral right.   *Cf.*

*Liberty Mut. Ins. Co.*, 534 F.Supp. 2d at 1320-23 (granting surety injunctive relief to protect the

surety's contractual right to collateralization).

       The Indemnity Agreement does provide, however, that Defendants exonerate Plaintiff

against liability as soon as liability exists or is asserted against Plaintiff, whether or not Plaintiff

---

[5] The *Liberty Mut. Ins. Co.* contract states, in pertinent part:

> If the Surety determines, in its sole judgment, that potential liability exists for losses
> and/or fees, costs and expenses for which the Indemnitors and Principals will be obliged
> to Indemnify the Surety under the terms of this Agreement or Other Agreements, the
> Indemnitors . . . shall deposit with the Surety, promptly upon demand, a sum of money
> equal to an amount determined by the Surety or collateral security of a type and value
> satisfactory to the Surety, to cover that liability, whether or not the Surety has: . . . (b)
> made any payments; or (c) received notice of any claims thereof . . . .

534 F.Supp. 2d at 1294.

[6] According to Plaintiff, the following section of the Indemnity Agreement relates to the posting
of collateral:

> . . . Payment by reason of the aforesaid causes shall be made to the Surety by the
> Contractor and Indemnitors as soon as liability exists or is asserted against the Surety,
> whether or not the Surety shall have made any payment therefor.   Such payment shall be
> equal to the amount of the reserve set by the Surety.   In the event of any payment by the
> Surety[,] the Contractor and Indemnitors further agree that in any accounting between the
> Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of
> them, the Surety shall be entitled to charge for any and all disbursements made by it in
> good faith in and about the matters herein contemplated by this Agreement under the
> belief that it is or was liable for the sums and amounts so disbursed, or that it was
> necessary or expedient to make such disbursements, whether or not such liability,
> necessity or expediency existed; and that the vouchers or other evidence of any such
> payments made by the Surety shall be prima facie evidence of the fact and amount of the
> liability to the Surety.

(PSUMF ¶ 3) (citing Compl., Ex. C).

has made any payment related to such liability.  (Compl., Ex. C.)  Additionally, Plaintiff posits

that it is entitled to either exoneration or *quia timet* under common law.  (Pl.'s Mot. 10- 14.)

Exoneration is the right of a surety to compel its principal to pay for [*sic*] debt for which the

surety's liability already has matured.  *See Northwestern Nat. Ins. Co. of Milwaukee, WI v.*

*Alberts*, 741 F.Supp. 424, 429 (S.D.N.Y. 1990).  On the other hand, *quia timet* is a right used to

protect a party against an anticipated future injury when it cannot be avoided by a present action

at law, for example, by allowing a surety to compel its principal to post collateral for an

anticipated liability.  *Id*.

      Defendant Niroomand-Rad contends that Plaintiff has no present right to exoneration

because Plaintiff's obligation to pay E.V. Construction has not become fixed and absolute.  (*See*

Def.'s Resp. 5.)  The Court agrees.[7]  Exoneration is only available to a surety after the principal's

debt has become due.  *See, e.g., Filner v. Shapiro*, 633 F.2d 139, 142 (2d Cir. 1980); *Borey v.*

*National Union Fire Ins. Co. of Pittsburgh, PA*, 934 F.2d 30, 32 (2d Cir. 1991).  According to

Plaintiff, its liability for E.V. Construction's claim remains unresolved in the pending state court

action. (*See* PSUMF ¶ 8.)  As such, no debt owed by Defendants related to the E.V. Construction

claim has yet become due, and Plaintiff is not entitled to exoneration at this time.

      Defendant Niroomand-Rad also argues that Plaintiff has no present right to *quia timet*

relief because Plaintiff has no rational basis for its fear that it will suffer a loss in the future based

on the E.V. Construction claim.  (*See* Def.'s Resp. 6-7.)  Under Florida law, "a party seeking

*quia timet* relief must clearly establish a basis for it."  *Transamerica Premium Ins. Co. v. Cavalry*

---

[7] Indeed, Plaintiff appears to concede this point, as it makes no attempt to refute Defendant
Niroomand-Rad's arguments regarding exoneration in its Reply.  (*See generally* Pl.'s Reply.)

*Const., Inc.*, 552 So.2d 225, 226-27 (Fla. 5th DCA 1989).  Having reviewed all relevant documents, the Court is convinced that Plaintiff has set forth sufficient grounds to make its belief that it will suffer a loss in connection with the E.V. Construction claim reasonable.  Although the mere existence of a pending claim does not establish that such claim has any merit or that the plaintiff (E.V. Construction) will likely prevail in any manner, the fact that GCCM is facing a default judgment with respect to such claim almost guarantees that Plaintiff, as surety, will face a loss in connection with the claim.  As such, the Court finds that Plaintiff is entitled to *quia timet* relief in this action, specifically, the posting of cash collateral to cover the $75,000 potentially owed to E.V. Construction, Inc.  Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion (D.E. 101) is GRANTED IN PART and DENIED IN PART in accordance with the above Order.[8]

DONE AND ORDERED in Chambers at Miami, Florida, this 29th day of May, 2008.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

_____

[8] Defendant Niroomand-Rad also argues that she has been prejudiced by Plaintiff's decision to deal exclusively with Defendant Ghovanloo in connection with GCCM and the subject defaults and claims once Defendant Niroomand-Rad discontinued her affiliation with GCCM.  (*See* Def.'s Resp. 7-8.)  Aside from being irrelevant to the issues at hand, Defendant Niroomand-Rad's contentions are meritless, for the Indemnity Agreement specifically waives any requirement that Plaintiff provide the Indemnitors (including Defendant Niroomand-Rad) with notices of claims or default:

ELEVENTH. . . . the Indemnitors hereby waive all notice of any default, or any other act or acts which rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder . . . .

(Compl., Ex. C.)